

**FILED** JJ
10/28/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**1:21-cr-00666**
**Judge Jorge L. Alonso**
**Magistrate Judge Jeffrey Cole**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

HASSAN ABDELLATIF, aka "Eric,"
HAMDAN HAMDAN, aka "Tony,"
EHAB KHRAIWISH,
WALEED KHRAWISH, aka "Wally,"
ALAA HAMDAN,
ERSELY ARITA-MEJIA,
FORTINO HERNANDEZ,
JEHAD KHRAWISH, and
MARISOL ZAVALA

No.

Violations: Title 18, United States
Code, Section 1343; Title 26, United
States Code, Section 7203; Title 42,
United States Code, Section 1760(g)

**Under Seal**

## COUNT ONE

The SPECIAL JANUARY 2020 GRAND JURY charges:

1.      At times material to this Indictment:

### The Women, Infants, and Children Program

a.      The Women, Infants, and Children ("WIC") Program was a federally funded special supplemental food program sponsored by the United States Department of Agriculture ("USDA"), managed by the Food and Nutrition Services, an agency within the USDA, and administered in Illinois by the Illinois Department of Human Services ("IDHS"). The WIC program was designed to provide a more nutritious diet to moderate and low-income infants, children up to five years of age, and pregnant, breastfeeding, and post-partum women.

b.      In Illinois, WIC benefits were issued to eligible recipients in the form of WIC food instruments ("WIC checks"). WIC checks were issued in "not to

1

exceed" dollar values and were valid only during the time period listed on the check. Each check listed the recipient's name, unique identification number, and quantity of the specific food items (for example, milk, cheese, eggs, cereal, and infant formula) eligible for purchase from retail stores participating in the WIC program.

      c.    In Illinois, the IDHS authorized vendors to participate in the WIC program. To participate in the WIC program, store vendors first completed an application that requested certain information such as the entity name, ownership, address, and other demographics relating to the store's qualification to become an authorized WIC vendor. The WIC program application required prospective vendors to certify that the store's WIC food sales would be 0-49% of food stamp-eligible sales. IDHS did not authorize a vendor who projected that its WIC food sales would be 50%-100% of its food-stamp eligible sales to operate in Illinois as a WIC vendor.

      d.    Before an applicant vendor was accepted to participate in the WIC program, the vendor was required to pass an on-site visit. In addition, as part of the application process, IDHS conducted an initial vendor cost analysis of that prospective vendor's WIC-eligible items. The purpose of the initial vendor cost analysis was to ensure that the applicant vendor's prices of the WIC-eligible items did not exceed 25% of IDHS's estimated food costs. As part of the analysis, IDHS compared the cost of the eligible WIC food items from the applicant vendor to its own list of estimated costs. If the applicant vendor's prices exceeded the estimated costs by 25%, IDHS denied the vendor's application.

e.      After an applicant vendor passed the initial vendor cost analysis, the applicant vendor was required to attend the WIC Retail Vendor training that was conducted by the Illinois Retail Merchants Association and Illinois Food Retailers. Each training program discussed changes to the USDA WIC regulations and other issues relating to the WIC vendor contract. After successful completion of the WIC vendor application process and training program, an applicant vendor was then eligible for authorization for participation in the WIC program.

f.      Authorized vendors signed contracts indicating that they would comply with all the rules and regulations of the WIC program. Authorized vendors in the WIC program were permitted to accept and redeem WIC checks only in connection with the sale of eligible WIC items. WIC vendors were not permitted to accept WIC checks for ineligible items. WIC vendors were not permitted to exchange WIC checks for cash. WIC vendors were also prohibited from accepting WIC checks before or after the time period during which the WIC checks were marked valid. WIC vendors were also not permitted to transfer WIC checks to or accept checks from other WIC vendors.

g.      After IDHS authorized a vendor to participate in the WIC program, IDHS issued the vendor a unique vendor number. That vendor number served as a secondary endorsement on the WIC check.

h.      Authorized WIC vendors deposited WIC checks at a local bank. A WIC processor that was located in Minnesota and that IDHS contracted with processed the WIC checks for payment and reconciliation. The WIC processor

subsequently submitted a request to the Federal Reserve Bank ("FRB") for the distribution of funds for payment. The FRB then sent a wire transfer with the monies to the WIC processor which, in turn, transferred or caused the transfer of monies to the WIC vendor's bank and thereafter into the WIC vendor's designated bank account.

### El Milagro Mini Market

i.      El Milagro Mini Market was a grocery store located at 3003 West Montrose Avenue, Chicago, Illinois. In or around September 2010, the IDHS authorized El Milagro Mini Market to participate in the WIC program, and to accept WIC checks as authorized by that program.

j.      Defendant HASSAN ABDELLATIF, also known as "Eric," was the president and owner of El Milagro Mini Market.

k.      In or around June 2010, defendant HASSAN ABDELLATIF, on behalf of El Milagro Mini Market, signed and submitted to the IDHS a WIC program application in which he represented and caused to be represented, among other things, that El Milagro Mini Market's WIC food sales were estimated to be 0-49% of the store's total food stamp-eligible food sales. In or around September 2010, defendant HASSAN ABDELLATIF, on behalf of El Milagro Mini Market, signed and submitted to the IDHS a WIC retail vendor contract in which he certified, among other things, that El Milagro Mini Market shall comply with the provisions of the USDA WIC regulations.

l.      Beginning no later than June 2010 and continuing through at least April 2013, defendant HASSAN ABDELLATIF maintained business bank accounts at Bank A, Bank B, Bank C, Bank D, Bank E, and Bank F. These bank accounts received electronic transfers of reimbursements for WIC checks redeemed at El Milagro Mini Market. HASSAN ABDELLATIF was the only authorized signatory on these bank accounts.

m.      From approximately October 2010 through March 2013, defendant HASSAN ABDELLATIF redeemed approximately $2,075,828.66 in WIC checks.

n.      In or around March 2013, El Milagro Mini Market voluntarily withdrew from the WIC program.

### In and Out Grocery

o.      In and Out Grocery was a grocery store located at 3929 West Grand Avenue, Chicago, Illinois. In or around January 2013, the IDHS authorized In and Out Grocery to participate in the WIC program, and to accept WIC checks as authorized by that program.

p.      Individual A was the listed president and owner of In and Out Grocery.

q.      In or around June 2012, Individual A, on behalf of In and Out Grocery, signed and submitted to the IDHS a WIC program application in which Individual A represented and caused to be represented, among other things, that In and Out Grocery's WIC food sales were estimated to be 0-49% of the store's total food

stamp-eligible food sales. In or around January 2013, Individual A, on behalf of In and Out Grocery, signed and submitted to the IDHS a WIC retail vendor contract in which Individual A certified, among other things, that In and Out Grocery shall comply with the provisions of the USDA WIC regulations.

r. In or around April 2014, defendant HAMDAN HAMDAN, also known as "Tony," signed and submitted to the IDHS, on behalf of In and Out Grocery, a proof of attendance at a WIC program retail vendor training. In that proof of attendance, defendant HAMDAN HAMDAN certified that he had been taught and understood, among other things, the responsibilities of a WIC vendor, WIC authorized foods, the food instrument redemption process, WIC fraud and abuse and sanctions, USDA WIC regulations, and the WIC vendor contract.

s. Beginning no later than August 2012 and continuing through at least March 2015, Individual A, defendant HASSAN ABDELLATIF, and Individual B maintained business bank accounts at Bank B, Bank D, Bank F, Bank G, and Bank H. These bank accounts received electronic transfers of reimbursements for WIC checks redeemed at In and Out Grocery. Individual A, defendant HASSAN ABDELLATIF, and Individual B were the only authorized signatories on these bank accounts.

t. From approximately February 2013 through March 2015, In and Out Grocery redeemed approximately $2,166,263.04 in WIC checks.

u. In or around March 2015, In and Out Grocery voluntarily withdrew from the WIC program.

**Harding Grocery**

v.     Harding Grocery was a grocery store located at 3929 West Grand Avenue, Chicago, Illinois. In or around August 2015, the IDHS authorized Harding Grocery to participate in the WIC program, and to accept WIC checks as authorized by that program.

w.     Defendant HASSAN ABDELLATIF was the president and owner of Harding Grocery.

x.     In or around April 2015, defendant HASSAN ABDELLATIF, on behalf of Harding Grocery, signed and submitted to the IDHS a WIC program application in which he represented and caused to be represented, among other things, that Harding Grocery's WIC food sales were estimated to be 0-49% of the store's total food stamp-eligible food sales. In or around August 2015, defendant HASSAN ABDELLATIF, on behalf of Harding Grocery, signed and submitted to the IDHS a WIC retail vendor contract in which he certified, among other things, that Harding Grocery shall comply with the provisions of the USDA WIC regulations.

y.     Beginning no later than July 2015 and continuing through at least October 2016, defendant HASSAN ABDELLATIF maintained business bank accounts at Bank F, Bank I, and Bank J. These bank accounts received electronic transfers of reimbursements for WIC checks redeemed at Harding Grocery. Defendant HASSAN ABDELLATIF was the only authorized signatory on these bank accounts.

z.    From approximately August 2015 through October 2016, defendant HASSAN ABDELLATIF redeemed approximately $1,838,969.26 in WIC checks.

aa.    In or around October 2016, Harding Grocery voluntarily withdrew from the WIC program.

### Three Cousins Supermarket

bb.    Three Cousins Supermarket was a grocery store located at 3743 West Grand Avenue, Chicago, Illinois. In or around October 2014, the IDHS authorized Three Cousins Supermarket to participate in the WIC program, and to accept WIC checks as authorized by that program.

cc.    Individual B was the listed president and owner of Three Cousins Supermarket.

dd.    In or around March 2014, Individual B, on behalf of Three Cousins Supermarket, signed and submitted to the IDHS a WIC program application in which Individual B represented and caused to be represented, among other things, that Three Cousins Supermarket's WIC food sales were estimated to be 0-49% of the store's total food stamp-eligible food sales. In or around October 2014, Individual B, on behalf of Three Cousins Supermarket, signed and submitted to the IDHS a WIC retail vendor contract in which Individual B certified, among other things, that Three Cousins Supermarket shall comply with the provisions of the USDA WIC regulations.

ee.    Beginning no later than April 2013, and continuing through at least July 2015, Individual B and defendant HASSAN ABDELLATIF maintained

8

business bank accounts at Bank B, Bank D, and Bank F. These bank accounts received electronic transfers of reimbursements for WIC checks redeemed at Three Cousins Supermarket. Individual B and defendant HASSAN ABDELLATIF were the only authorized signatories on these bank accounts.

ff.     From approximately December 2014 through July 2015, Three Cousins Supermarket redeemed approximately $950,041.18 in WIC checks.

gg.     In or around July 2015, Three Cousins Supermarket voluntarily withdrew from the WIC program.

### La Villita Food Market

hh.     La Villita Food Market was a grocery store located at 2061 South Kedzie Avenue, Chicago, Illinois. In or around May 2015, the IDHS authorized La Villita Food Market to participate in the WIC program, and to accept WIC checks as authorized by that program.

ii.     Defendant HAMDAN HAMDAN was the president and owner of La Villita Food Market.

jj.     In or around February 2015, defendant HAMDAN HAMDAN, on behalf of La Villita Food Market, signed and submitted to the IDHS a WIC program application in which he represented and caused to be represented, among other things, that La Villita's WIC food sales were estimated to be 0-49% of the store's total food stamp-eligible food sales. In or around May 2015, defendant HAMDAN HAMDAN, on behalf of La Villita Food Market, signed and submitted to the IDHS a WIC retail vendor contract in which defendant HAMDAN HAMDAN certified, among

other things, that La Villita Food Market shall comply with the provisions of the USDA WIC regulations.

kk.     From approximately June 2015 through October 2016, La Villita Food Market redeemed approximately $1,299,231.19 in WIC checks.

ll.     In or around October 2016, La Villita Food Market voluntarily withdrew from the WIC program.

### Supermercado El Grande

mm.     Supermercado El Grande was a grocery store located at 77 East Fullerton, Addison, Illinois. In or around July 2014, the IDHS authorized Supermercado El Grande to participate in the WIC program, and to accept WIC checks as authorized by that program.

nn.     Individual C was the listed president and owner of Supermercado El Grande.

oo.     In or around March 2014, Individual C, on behalf of Supermercado El Grande, signed and submitted to the IDHS a WIC program application in which Individual C represented and caused to be represented, among other things, that Supermercado El Grande's WIC food sales were estimated to be 0-49% of the store's total food stamp-eligible food sales. In or around July 2014, Individual C, on behalf of Supermercado El Grande, signed and submitted to the IDHS a WIC retail vendor contract in which Individual C certified, among other things, that Supermercado El Grande shall comply with the provisions of the USDA WIC regulations.

pp. From approximately July 2014 through July 2018, Supermercado El Grande redeemed approximately $3,530,541.83 in WIC checks.

### Store A

qq. Store A was a grocery store located in Harvard, Illinois. In or around March 2017, the IDHS authorized Store A to participate in the WIC program, and to accept WIC checks as authorized by that program.

rr. Co-Schemer A was the president and owner of Store A.

ss. In or around December 2016, Co-Schemer A, on behalf of Store A, signed and submitted to the IDHS a WIC program application in which he represented and caused to be represented, among other things, that Store A's WIC food sales were estimated to be 0-49% of the store's total food stamp-eligible food sales. In or around March 2017, Co-Schemer A, on behalf of Store A, signed and submitted to the IDHS a WIC retail vendor contract in which Co-Schemer A certified, among other things, that Store A shall comply with the provisions of the USDA WIC regulations.

tt. Beginning no later than February 2014 and continuing through at least August 2018, Co-Schemer A maintained business bank accounts at Bank B and Bank K. These bank accounts received electronic transfers of reimbursements for WIC checks redeemed at Store A. Co-Schemer A was the only authorized signatory on these bank accounts.

uu. From approximately March 2017 through August 2018, Co-Schemer A redeemed approximately $2,213,834.16 in WIC checks.

### El Charro Food

vv.    El Charro Food was a grocery store located at 158 North 19th Avenue, Melrose Park, Illinois. In or around October 2015, the IDHS authorized El Charro Food to participate in the WIC program, and to accept WIC checks as authorized by that program.

ww.    Individual D was the listed president and owner of El Charro Food.

xx.    In or around June 2015, Individual D, on behalf of El Charro Food, signed and submitted to the IDHS a WIC program application in which Individual D represented and caused to be represented, among other things, that El Charro Food's WIC food sales were estimated to be 0-49% of the store's total food stamp-eligible food sales. In or around October 2015, Individual D, on behalf of El Charro Food, signed and submitted to the IDHS a WIC retail vendor contract in which Individual D certified, among other things, that El Charro Food shall comply with the provisions of the USDA WIC regulations.

yy.    From approximately October 2015 through August 2018, El Charro Food redeemed approximately $1,341,800.72 in WIC checks.

### Star Mini Market

zz.    Star Mini Market was a grocery store located at 1580 South Busse Road, Mount Prospect, Illinois. In or around March 2016, the IDHS authorized Star Mini Market to participate in the WIC program, and to accept WIC checks as authorized by that program.

aaa.    Individual E was the listed owner of Star Mini Market.

bbb.    In or around December 2015. Individual E, on behalf of Star Mini Market, signed and submitted and caused to be signed and submitted to the IDHS a WIC program application in which Individual E represented and caused to be represented, among other things, that Star Mini Market's WIC food sales were estimated to be 0-49% of the store's total food stamp-eligible food sales. In or around March 2016, Individual E, on behalf of Star Mini Market, signed and submitted and caused to be signed and submitted to the IDHS a WIC retail vendor contract in which Individual E certified, among other things, that Star Mini Market shall comply with the provisions of the USDA WIC regulations.

ccc.    From approximately March 2016 through July 2018, Star Mini Market redeemed approximately $3,176,713.66 in WIC checks.

### Mercado La Estrella

ddd.    Mercado La Estrella was a grocery store located at 419 Dundee Avenue, Elgin, Illinois. In or around June 2016, the IDHS authorized Mercado La Estrella to participate in the WIC program, and to accept WIC checks as authorized by that program.

eee.    Defendant EHAB KHRAIWISH was the president and owner of Mercado La Estrella.

fff.    In or around March 2016, defendant EHAB KHRAIWISH, on behalf of Mercado La Estrella, signed and submitted to the IDHS a WIC program application in which he represented and caused to be represented, among other

things, that Mercado La Estrella's WIC food sales were estimated to be 0-49% of the store's total food stamp-eligible food sales. In or around June 2016, defendant EHAB KHRAIWISH, on behalf of Mercado La Estrella, signed and submitted to the IDHS a WIC retail vendor contract in which defendant EHAB KHRAIWISH certified, among other things, that Mercado La Estrella shall comply with the provisions of the USDA WIC regulations.

ggg.  In or around May 2016 and May 2017, defendant EHAB KHRAIWISH signed and submitted to the IDHS for Mercado La Estrella a proof of attendance at a WIC program retail vendor training. In that proof of attendance, defendant EHAB KHRAIWISH certified that he had been taught and understood, among other things, the responsibilities of a WIC vendor, WIC authorized foods, the food instrument redemption process, WIC fraud and abuse and sanctions, USDA WIC regulations, and the WIC vendor contract.

hhh.  From approximately June 2016 through August 2018, defendant EHAB KHRAIWISH redeemed approximately $1,118,811.92 in WIC checks.

2.  Beginning no later than in or around October 2010, and continuing until in or around March 2019, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

HASSAN ABDELLATIF, aka "Eric,"
HAMDAN HAMDAN, aka "Tony,"
EHAB KHRAIWISH,
WALEED KHRAWISH, aka "Wally,"
ALAA HAMDAN,
ERSELY ARITA-MEJIA,
FORTINO HERNANDEZ,
JEHAD KHRAWISH, and

MARISOL ZAVALA,

defendants herein, together with others known and unknown to the Grand Jury, including Co-Schemer A, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money from the IDHS and USDA by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3.     It was part of the scheme that beginning in or around October 2010, and continuing until in or around March 2019, defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, EHAB KHRAIWISH, WALEED KHRAWISH, ALAA HAMDAN, ERSELY ARITA-MEJIA, FORTINO HERNANDEZ, JEHAD KHRAWISH, and MARISOL ZAVALA fraudulently redeemed and caused to be redeemed WIC checks in violation of WIC program regulations.

4.     It was further part of the scheme that defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, EHAB KHRAIWISH, WALEED KHRAWISH, ALAA HAMDAN, ERSELY ARITA-MEJIA, FORTINO HERNANDEZ, JEHAD KHRAWISH, and MARISOL ZAVALA controlled, operated, and/or worked at convenience stores in the Northern District of Illinois that were authorized WIC Vendors, including El Milagro Mini Market, In and Out Grocery, Harding Grocery, Three Cousins Supermarket, La Villita Food Market, Supermercado El Grande, El Charro Food, Star Mini Market, and Mercado La Estrella ("the stores").

5.     It was further part of the scheme that defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, EHAB KHRAIWISH, WALEED KHRAWISH,

ALAA HAMDAN, ERSELY ARITA-MEJIA, FORTINO HERNANDEZ, JEHAD KHRAWISH, and MARISOL ZAVALA fraudulently redeemed and caused to be redeemed WIC checks at the stores by knowingly allowing customers to provide WIC checks as payment in connection with the sale of ineligible WIC items, often at inflated prices.

6.     It was further part of the scheme that defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, EHAB KHRAIWISH, WALEED KHRAWISH, ALAA HAMDAN, ERSELY ARITA-MEJIA, FORTINO HERNANDEZ, JEHAD KHRAWISH, and MARISOL ZAVALA fraudulently redeemed and caused to be redeemed WIC checks at the stores by knowingly allowing customers to exchange WIC checks as payment for items before and after the time period during which the WIC checks were marked valid.

7.     It was further part of the scheme that defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, EHAB KHRAIWISH, and WALEED KHRAWISH deposited and caused the deposit of WIC checks fraudulently redeemed at one store into a bank account associated with another store and that store's owner in order conceal the volume of sales being conducted with WIC checks at certain stores.

8.     It was further part of the scheme that defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, and WALEED KHRAWISH withdrew and caused to be withdrawn a store's participation in the WIC program to evade detection from IDHS regarding their stores' fraudulent WIC redemptions.

9. It was further part of the scheme that, after having withdrawn or caused to be withdrawn a store's participation in the WIC program, defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, and WALEED KHRAWISH used and caused to be used, and attempted to use and cause to be used, a third-party nominee to assume nominal ownership of a store while still maintaining financial association with, management of, and employment at the store, all to evade detection from IDHS.

10. It was further part of the scheme that, after having withdrawn or caused to be withdrawn a store's participation in the WIC program, defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, and WALEED KHRAWISH opened and caused to be opened the store under the name of the third-party nominee in the same physical location as the withdrawn store.

11. It was further part of the scheme that, after having withdrawn or caused to be withdrawn a store's participation in the WIC program, defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, and WALEED KHRAWISH used and caused to be used, and attempted to use and cause to be used, a third-party nominee to apply for participation in the WIC program under the name of the third-party nominee while still maintaining financial association with, management of, and employment at the store, all to evade detection from IDHS.

12. It was further part of the scheme that defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, EHAB KHRAIWISH, and WALEED KHRAWISH opened multiple bank accounts for each store controlled and operated by them and spread among those accounts the deposits of WIC checks fraudulently

redeemed at their stores in order to conceal the amount of actual WIC check redemptions occurring at those stores.

13. It was further part of the scheme that defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, EHAB KHRAIWISH, WALEED KHRAWISH, ALAA HAMDAN, ERSELY ARITA-MEJIA, FORTINO HERNANDEZ, JEHAD KHRAWISH, and MARISOL ZAVALA misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and the purpose of those acts.

14. On or about May 19, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

HASSAN ABDELLATIF, aka "Eric,"
and ERSELY ARITA-MEJIA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely data relating to the negotiation of the batch deposit of WIC checks numbered 38049304, 38049305, 38049306, and 38049307, in the amounts of $24.67, $7.73, $10.52, and $8.00, respectively, from the Illinois Department of Human Services to Star Mini Market, which data was processed by servers located outside Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraphs 1 through 13 of Count One are incorporated here.

2.     On or about January 4, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

WALEED KHRAWISH, aka "Wally,"
and JEHAD KHRAWISH,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely data relating to the negotiation of a WIC check numbered 43857972, in the amount of $6.69, from the Illinois Department of Human Services to Store A, which data was processed by servers located outside Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.      Paragraphs 1 through 13 of Count One are incorporated here.

2.      On or about May 15, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

HAMDAN HAMDAN, aka "Tony,"
ALAA HAMDAN, and
FORTINO HERNANDEZ,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely data relating to the negotiation of the batch deposit of WIC checks numbered 46944592, 46944593, 46944594, and 46944595, in the amounts of $16.70, $7.86, $10.13, and $7.96, respectively, from the Illinois Department of Human Services to Supermercado El Grande, which data was processed by servers located outside Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraphs 1 through 13 of Count One are incorporated here.

2.     On or about June 1, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

EHAB KHRAIWISH and
MARISOL ZAVALA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely data relating to the negotiation of the batch deposit of WIC checks numbered 45991698, 45991699, and 45991700, in the amounts of $23.09, $17.52, and $12.03, respectively, from the Illinois Department of Human Services to Store A, which data was processed by servers located outside Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraphs 1 through 13 of Count One are incorporated here.

2.     On or about June 14, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

WALEED KHRAWISH, aka "Wally,"
and JEHAD KHRAWISH,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely data relating to the negotiation of the batch deposit of WIC checks numbered 47594379 and 47594380, in the amounts of $25.19 and $17.35, respectively, from the Illinois Department of Human Services to Store A, which data was processed by servers located outside Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraphs 1 through 13 of Count One are incorporated here.

2.     On or about June 20, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

HASSAN ABDELLATIF, aka "Eric,"
and ERSELY ARITA-MEJIA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely data relating to the negotiation of the batch deposit of WIC checks numbered 47114848, 47114849, 47114855, 47114856, 47114857, and 47114861, in the amounts of $9.74, $8.00, $7.75, $11.18, $8.00, and $8.00, respectively, from the Illinois Department of Human Services to Star Mini Market, which data was processed by servers located outside Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraphs 1 through 13 of Count One are incorporated here.

2.     On or about June 21, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

EHAB KHRAIWISH and
MARISOL ZAVALA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely data relating to the negotiation of the batch deposit of WIC checks numbered 45069801, 45069802, 45069803, and 45069804, in the amounts of $20.71, $14.43, $13.11, and $8.00, respectively, from the Illinois Department of Human Services to Mercado La Estrella, which data was processed by servers located outside Illinois;

In violation of Title 18, United States Code, Section 1343.

24

## COUNT EIGHT

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraphs 1 through 13 of Count One are incorporated here.

2.     On or about June 26, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

HAMDAN HAMDAN, aka "Tony,"
ALAA HAMDAN, and
FORTINO HERNANDEZ,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely data relating to the negotiation of the batch deposit of WIC checks numbered 46944600, 46944601, 46944602, and 46944603, in the amounts of $24.21, $7.86, $11.25, and $7.96, respectively, from the Illinois Department of Human Services to Supermercado El Grande, which data was processed by servers located outside Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT NINE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.      Paragraphs 1 through 13 of Count One are incorporated here.

2.      On or about July 8, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

EHAB KHRAIWISH and
MARISOL ZAVALA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely data relating to the negotiation of the batch deposit of WIC checks numbered 47305012, 47305013, and 47305015, in the amounts of $24.21, $7.86, and $8.00, respectively, from the Illinois Department of Human Services to Store A, which data was processed by servers located outside Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT TEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One are incorporated here.

2. On or about July 12, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

WALEED KHRAWISH, aka "Wally,"
and JEHAD KHRAWISH,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely data relating to the negotiation of the batch deposit of WIC checks 47594371, 47594372, 47594373, 47594374, 47594383, 47594384, and 47594385, in the amounts of $25.19, $14.50, $9.74, $8.00, $25.19, $17.35, and $9.74, respectively, from the Illinois Department of Human Services to Store A, which data was processed by servers located outside Illinois;

In violation of Title 18, United States Code, Section 1343.

## **COUNT ELEVEN**

The SPECIAL JANUARY 2020 GRAND JURY further charges:

On or about August 2, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

HASSAN ABDELLATIF, aka "Eric,"
and ERSELY ARITA-MEJIA,

defendants herein, received, concealed, and retained funds, assets, and property of the value of $100 or more, in the form of WIC checks, from the United States Department of Agriculture, that were the subject of a grant and other form of assistance under the Child Nutrition Act, to personal use and gain, knowing such funds, assets, and property had been embezzled, willfully misapplied and obtained by fraud;

In violation of Title 42, United States Code, Section 1760(g).

## COUNT TWELVE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

On or about August 2, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

HAMDAN HAMDAN, aka "Tony,"<br>
ALAA HAMDAN, and<br>
FORTINO HERNANDEZ,

defendants herein, received, concealed, and retained funds, assets, and property of the value of $100 or more, in the form of WIC checks, from the United States Department of Agriculture, that were the subject of a grant and other form of assistance under the Child Nutrition Act, to personal use and gain, knowing such funds, assets, and property had been embezzled, willfully misapplied and obtained by fraud;

In violation of Title 42, United States Code, Section 1760(g).

## COUNT THIRTEEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

On or about August 2, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

EHAB KHRAIWISH and
MARISOL ZAVALA,

defendants herein, received, concealed, and retained funds, assets, and property of the value of $100 or more, in the form of WIC checks, from the United States Department of Agriculture, that were the subject of a grant and other form of assistance under the Child Nutrition Act, to personal use and gain, knowing such funds, assets, and property had been embezzled, willfully misapplied and obtained by fraud;

In violation of Title 42, United States Code, Section 1760(g).

## COUNT FOURTEEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

On or about August 2, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

WALEED KHRAWISH, aka "Wally,"
and JEHAD KHRAWISH,

defendants herein, received, concealed, and retained funds, assets, and property of the value of $100 or more, in the form of WIC checks, from the United States Department of Agriculture, that were the subject of a grant and other form of assistance under the Child Nutrition Act, to personal use and gain, knowing such funds, assets, and property had been embezzled, willfully misapplied and obtained by fraud;

In violation of Title 42, United States Code, Section 1760(g).

## COUNT FIFTEEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1. At times material to this Indictment:

a. Defendant HASSAN ABDELLATIF was the president and sole owner of Harding Grocery, Inc., located in Chicago, Illinois, which was a company that operated as a grocery store.

b. Harding Grocery, Inc. was a Subchapter C Corporation and therefore was required to file an annual United States Corporate Income Tax Return, Form 1120, with schedules and attachments, with the Internal Revenue Service accurately reporting its gross receipts and any deductions and credits allowed by law. As president and owner, defendant HASSAN ABDELLATIF was required by law to make and file such return on behalf of Harding Grocery, Inc.

2. On or about March 15, 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

HASSAN ABDELLATIF, aka "Eric,"

defendant herein, being the president and owner of Harding Grocery, Inc., was required by law, following the close of calendar year 2015 and on or before March 15, 2016, to make and file an income tax return (Form 1120 and accompanying schedules) for Harding Grocery, Inc. Knowing the foregoing, defendant did willfully fail, on or about March 15, 2016, in the Northern District of Illinois, and elsewhere, to make said income tax return;

In violation of Title 26, United States Code, Section 7203.

## COUNT SIXTEEN

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.      Paragraphs 1(a)-1(b) of Count Fifteen are incorporated here.

2.      On or about April 18, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

HASSAN ABDELLATIF, aka "Eric,"

defendant herein, being the president and owner of Harding Grocery, Inc., was required by law, following the close of calendar year 2016 and on or before April 18, 2017, to make and file an income tax return (Form 1120 and accompanying schedules) for Harding Grocery, Inc., accurately reporting its gross receipts and any deductions and credits. Knowing the foregoing, defendant did willfully fail, on or about April 18, 2017, in the Northern District of Illinois, and elsewhere, to make said income tax return;

In violation of Title 26, United States Code, Section 7203.

## **FORFEITURE ALLEGATION**

The SPECIAL JANUARY 2020 GRAND JURY further alleges:

1.     The allegations of Counts One through Ten of this Indictment are incorporated here for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendants HASSAN ABDELLATIF, HAMDAN HAMDAN, EHAB KHRAIWISH, WALEED KHRAWISH, ALAA HAMDAN, ERSELY ARITA-MEJIA, FORTINO HERNANDEZ, JEHAD KHRAWISH, and MARISOL ZAVALA shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

3.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the

United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY